# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Agence France Presse,<br>1015 15th St NW,<br>Washington, DC 20005<br><br>          Plaintiff,<br><br>v.<br><br>Google Inc.,<br>a California Corporation,<br>1600 Amphitheatre Pkwy,<br>Mountain View, CA 94043<br><br>          Defendant. | CIVIL ACTION NO.: 1:05CV00546 (GK)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF AFP'S MOTION TO DISMISS** |

## I. INTRODUCTION

Plaintiff Agence France Presse ("AFP") filed suit against Defendant Google Inc. ("Google") for the copyright infringement of AFP's photographs, news headlines and story leads and the misappropriation of AFP's "hot news". Google responded to AFP's complaint by raising several defenses and presenting three counter claims for declaratory judgment. By this Motion, AFP asks this Court to dismiss one of Google's affirmative defenses and two of its counterclaims.

## II. FACTUAL BACKGROUND

AFP is an international wire service that generates news photos and stories on a daily basis. AFP licenses these photos and news stories to third party media companies including companies that operate web sites on the Internet, such as newspapers, magazines, portals and news aggregators.

Google, Inc. is a technology company that offers, among other products and services, "the world's largest search engine." In September 2002, Google began offering news services. It is those news services that prompted AFP's lawsuit.

For its news service, called Google News, Google, "gathers stories from more than 4,500 news sources in English worldwide, and automatically arranges them to present the most relevant news first. Topics are updated every 15 minutes, so you're likely to see new stories each time you check the page". <http://news.google.com/intl/en_us/about_google_news.html>. Google News is designed in such a way that a user can visit Google News and obtain a significant amount of information about current events without ever having to leave Google to visit the original source of the information. AFP sued Google because in gathering and arranging stories for Google News, Google reproduced headlines, text and photographs from AFP stories without first obtaining AFP's consent. Google claims that it does not need AFP's consent because (a) the safe harbor provisions of section 512 of the Copyright Act immunize Google from liability for copyright infringement, (b) AFP's headlines and story leads are not subject to copyright protection as a matter of law, and (c) AFP assented to Google's use of its copyrighted news stories, headlines, text and photographs, because AFP and its licensees did not secure AFP's copyright protected material from Google's trolling webbots. Those arguments form the basis of the affirmative defense and counterclaims AFP asks this Court to dismiss.

### III.   ARGUMENT

Under Fed. R. Civ. P. 12(c), a motion for judgment on the pleadings shall be granted if the moving party demonstrates that "no material fact is in dispute and that it is 'entitled to judgment as a matter of law.'" *Stewart v. Evans*, 348 U.S. App. D.C. 382 (D.C. Cir., 2002) (*citing Peters v. Nat'l R.R. Passenger Corp.*, 296 U.S. App. D.C. 202, 966 F.2d 1483, 1485 (D.C. Cir. 1992) (*citations omitted*)).

This Motion seeks the dismissal, as a matter of law, of Google's Tenth Affirmative Defense and its First and Third Counterclaims.  Dismissal is appropriate because there are no material facts in dispute.  Google readily admits that it used certain AFP photographs, headlines, and story leads for its Google News service.  Moreover, Google cannot sustain either the affirmative defense or the counterclaims as a matter of law.

By its Tenth Affirmative Defense, Google claims that it is immunized from liability by the safe harbor provisions of section 512 of the Copyright Act.  Specifically, section 512 protects service providers that link – through the service provider's information location tools – to infringing content on the web sites of third parties.  This defense must fail because Google is not linking to infringing material.  On the contrary, Google is directly infringing AFP's material by siphoning it off AFP subscribers' web sites and reproducing and displaying the material on Google News.

Google's First Counterclaim seeks a declaration by the Court that AFP's headlines and story leads are not subject to copyright protection as a matter of law.  This claim must fail because nothing in the law supports this position, which would severely limit the protection available to every wire service, newspaper and journalist in the world.

Google's Third Counterclaim seeks a declaration that because AFP and its licensees did not secure AFP's copyright protected material from Google's trolling web crawlers AFP has effectively lost its statutorily mandated protection and assented to Google's use of the material.  This counterclaim must fail because it essentially asks the Court to impose a new set of requirements on copyright owners that alter and limit their fundamental rights under copyright law, specifically that in order to maintain their copyright on material posted on the internet that they must install electronic protective shields around their content or forfeit their rights.

A. **Google Is Not Immune From Monetary Relief as a Service Provider Under Section 512(k) of the Copyright Act**

Google's Tenth Affirmative Defense claims that Section 512 of the Copyright Act precludes an award of monetary damages against Google because it is a "service provider". Google's defense refers to 17 U.S.C. § 512(d), which states in part:

> A service provider shall not be liable for monetary relief, or, except as provided in subsection (j), for injunctive or other equitable relief, for infringement of copyright by *reason of the provider referring or linking users to an online location containing infringing material* or infringing activity, by using information location tools, including a directory, index, reference, pointer, or hypertext link…. (emphasis added).

As a matter of law, Section 512(d) does not protect Google from its involvement in Google News.

The Court does not even need to decide whether Google is a service provider in order to rule that § 512 does not protect Google from infringement in this case. Google's activities do not fall under the conditions of § 512 (d). Even if Google is a service provider while operating Google News, Google News does not refer or link users to an online location containing infringing material. Rather, Google's own web site is the online location that contains the infringing material. The web sites that Google links to are not the parties responsible for infringing AFP's work. Section 512 would only protect Google from liability for linking to a third party web site that was posting infringing material. Here, however, Google is "crawling" web sites operated by AFP's authorized licensees and taking AFP's copyright protected works for the purpose of unauthorized reproduction and display on Google's web site, Google News.

The differing roles of a service provider are demonstrated in the case *Corbis Corp. v. Amazon.com, Inc.*, 351 F. Supp. 2d 1090 (W.D. Wash. 2004). In that case, Amazon.com was the owner of IMDB.com, the Internet Movie Database. Corbis sued

Amazon.com because two images owned by Corbis appeared in an IMDB.com banner ad and hundreds more were reproduced as unauthorized movie posters sold by third party vendors operating on the IMDB.com network.  Amazon.com provided online stores and hosting for the vendors but was not in immediate control of the content sold by these vendors.  The Court ruled that Amazon.com was a service provider under Section 512 and immune from monetary liability for the actions of its third party vendors.  However, § 512 (d) did not preclude monetary damages against Amazon.com for its use of the two images in the IMDB.com banner advertisement.  Amazon.com was the only party responsible for the unauthorized use of the images in the banner advertisement and was therefore not acting as a service provider in this context.  Similarly, no one but Google is to blame for the unauthorized use of AFP's works on Google News, so its acts are outside the protection of Section 512.

**B.     The AFP Material Used by Google is Copyrightable Subject Matter**

Google's First Counterclaim alleges that AFP's headlines and story leads are not subject to copyright protection.  Google's rationale is that AFP's headlines and story leads are mere facts or ideas that contain zero, or *de minimis*, creative expression.  Google's counterclaim seeks a Court declaration that as a matter of law all headlines and story leads are not subject to copyright protection.  As AFP will show, the law does not support such a finding and so the Court must dismiss Google's first counterclaim.

"Copyright protection subsists…in original works of authorship fixed in any tangible medium of expression."  17 U.S.C. § 102.  The question before the Court is whether headlines and story leads are original works of authorship deserving of protection.  The Copyright Office and case law has not answered this question directly,

but they do provide sufficient guidance to assist the Court in finding that as a matter of law, it cannot deny protection to headlines and story leads wholesale.[1]

The Copyright Office has placed restrictions on some materials for which copyright protection is not available.  37 C.F.R. § 202.1(a) states that: "Words and short phrases such as names, titles, and slogans" are not subject to copyright.  *See also* U.S. Copyright Office Circular 34.  The leading treatise on Copyright law, N*immer on Copyright*, reveals that short phrases with a level of creativity can in fact claim copyright protection.

> However, it must be recalled that even most commonplace and banal results of independent effort may command copyright protection, provided such independent effort is quantitatively more than minimal (e.g., exceeds that required for a fragmentary work or short phrase).  Conversely, it would seem (notwithstanding the above quoted Copyright Office Regulation) that even a short phrase may command copyright protection if it exhibits sufficient creativity.

1 M. Nimmer, Nimmer on Copyright § 2.01(B) (2005) (citing *Heim v. Universal Pictures Corp., Inc., 154 F.2d 480 n.17 (2d Cir. 1946)* in which case Judge Frank suggested that copyright protection would be accorded to such lines as "Euclid alone has looked on Beauty bare" and "Twas brillig and the slithy toves.")

The headlines that Google has used without permission are neither names, titles, nor short phrases/expressions.  It is important to note that the Copyright Office regulations do <u>not</u> refer to headlines.  Headlines are distinct from titles, slogans and short phrases.  If headlines were intended to be excluded under the Copyright Office regulations, then they would have been specifically listed.

---

[1] Although Google's counterclaim focuses on AFP's headlines and story leads, its request for declaratory judgment would effectively cover all authors' headlines and story leads.  On information and belief, Google has used hundreds of AFP headlines and story leads.  As a practical matter, Google cannot argue that AFP's headlines and story leads are not worthy of protection while headlines and story leads by another news agency are.  In this context, it is all or nothing.

Story leads are the two or three most important sentences taken from AFP's larger works. Google even admits that "The first sentence of AFP news stories typically contain the most significant facts." *See* Counterclaim ¶144. Courts have found that even one short sentence can be more than *de minimis*, E.g. "When there is no room in hell ... the dead will walk the earth" or "I love you E.T." or "E.T. Phone Home". *See Dawn Assocs. v. Links*, 203 U.S.P.Q. 831 (N.D. Ill. 1978). *See also Universal City Studios, Inc. v. Kamar Indus., Inc.*, 217 U.S.P.Q. 1162 (S.D. Tex. 1982).

Unlike "short phrases," AFP headlines and leads are not stand-alone items but rather integral parts of stories. By taking the headlines and story leads of AFP's news stories, Google is extracting the heart of the work. *See Harper & Row, Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539 (U.S., 1985).

Google asserts that the headlines and story leads consist in whole or in substantial part of mere facts and ideas, and are therefore not subject to copyright protection. While it is true that mere facts and ideas are not protected by copyright, AFP's headlines and story leads are much more than just mere facts and ideas.

> "Obviously, a fact does not originate with the author of a book describing the fact. Neither does it originate with one who "discovers" the fact. "The discoverer merely finds and records. He may not claim that the facts are 'original' with him *although there may be originality and hence authorship in the manner of reporting, i.e., the 'expression,' of the facts."* 1 M. Nimmer, Nimmer on Copyright § 2.03(E), at 2-34 (1980). (emphasis added)

1 M. Nimmer, Nimmer on Copyright § 2.11(B) (2005) further explains that:

Notwithstanding the denial of copyright protection for the facts set forth in a factual account, it is clear that protection will be accorded to the literal form of expression of such an account if such form is original with the copyright claimant. Thus, even if anyone may copy the facts set forth in a copyrighted news article, *history book, or similar factual work, subject to the defense of fair use, there may not be a word for word or very closely paraphrased copying. Similarly protected*

> *are ... photographs of news events, and even original illustrations depicting historical events*. (emphasis added)

Google's position assumes that all headlines and story leads are just facts and ideas devoid of expression. However, the legions of journalists who spend hours creating headlines and story leads that will best capture their readers attention and communicate the essence of the story would certainly disagree with Google's sentiments. Story leads catch the attention of the readers; they are the most important part of any news story. By definition, all news articles contain factual reports of actual events. But these factual reports can be written in an infinite number of ways depending on the original expression of each author.

AFP can only assume that Google is not prepared to argue that an entire news article is not subject to copyright protection. Certainly, the law does not allow the Los Angeles Times to simply copy the articles from the New York Times each day without repercussion. The U.S. copyright law clearly forbids such acts. It would then logically follow that the leads of the story, the most creative component of the work, would also deserve equal protection. AFP questions whether it would be any less egregious if the LA Times were to copy all of the headlines and story leads from the NY Times each day.

Each author contributes more than minimal original expression when he or she sculpts a written news report. Different authors will draw initial attention to different aspects of a factual event to best accomplish what that author feels is a compelling lead. Ample original expression exists in the manner in which each author attempts to capture the reader's attention. There is even original expression in which facts the author selects to present to the reader first and the order in which he presents the subsequent facts. A

real world example will better demonstrate the wide range of original creativity that authors express when covering the same story.

The following list of headlines and story leads shows how different authors chose to characterize the meeting between President George W Bush and President Hamid Karzai held on May 23, 2005. The various authors introduce the same event to the reader in different ways depending on how the author chose to express the facts he selected to present first.

1. *Karzai strikes out with Bush* (CBC News) – There was little movement on a series of issues between the United States and Afghanistan during a meeting in Washington, comments by the leaders of the two countries indicated on Monday. <http://www.cbc.ca/storyview/MSN/world/national/2005/05/23/bush-karzai050523.html>

2. *Bush, Karzai agree on US military presence in Afghan* (Sify.com) – US President George W. Bush and Afghanistan's President Hamid Karzai signed a "strategic partnership" enabling long term American involvement in Afghanistan's security as well as reconstruction. <http://sify.com/news/fullstory.php?id=13806702>

3. *Afghan President Declines to Blame U.S. for Abuse* (Timothy Williams) - President Hamid Karzai of Afghanistan met with President Bush today and said that he did not hold the United States to blame for the abuse of Afghan prisoners by American soldiers and that recent anti-American rioting in his country was aimed at destabilizing his government. <http://www.nytimes.com/2005/05/23/international/asia/23cnd-karzai.html?hp&ex=1116907200&en=eb59bb60d6cb8db9&ei=5094&partner=homepage>

4. *Bush, Karzai Formalize Partnership Focused on Afghan Progress* (Donna Miles, American Forces Press Service) – The presidents of the United States and Afghanistan today signed an agreement that establishes a long-term relationship designed to promote ongoing progress in Afghanistan. <http://www.defenselink.mil/news/May2005/20050523_1284.html>

5. *Tension behind Bush-Karzai talks* (Justin Webb, BBC News) – This was a meeting of friends - genuine friends - whose relationship is based on mutual respect. But the meeting was taking place against a backdrop of real tensions. President Karzai sought to address and reduce those tensions. <http://news.bbc.co.uk/2/hi/south_asia/4573911.stm>

   **6.**   *Bush, Karzai Discuss Military Operations, Opium Trade* (VOA News) – President Bush says American troops in Afghanistan will remain under U.S. control, despite indications from Afghan President Karzai that he would like more authority over them. <http://www.voanews.com/english/2005-05-23-voa33.cfm>

   **7.**   *Bush Calls for Closer Ties with Afghanistan* (Paula Wolfson) – President Bush and Afghan President Hamid Karzai have agreed to seek stronger political, economic, and security ties. <http://www.voanews.com/english/2005-05-23-voa34.cfm>

   **8.**   *Bush, Karzai paper over differences on U.S. troops* (Steve Holland, Reuters) – President George W. Bush and Afghan President Hamid Karzai papered over their differences over U.S. military operations in Afghanistan on Monday and agreed that American forces will have "freedom of action." <http://www.alertnet.org/thenews/newsdesk/N23242548.htm>

   **9.**   *US, Afghan presidents meet amid protests* (Age) – President George W Bush held up Afghanistan as a model of emerging democracy, but President Hamid Karzai went to their meeting waving a list of grievances ... <http://www.theage.com.au/news/World/US-Afghan-presidents-meet-amid-protests/2005/05/24/1116700674068.html>

   **10.**   *Bush, Karzai sign pact for U.S. presence in Afghanistan* (Al Jazerra) – U.S. President George Bush and his Afghani counterpart Hamid Karzai signed a "strategic partnership" enabling long term American involvement in Afghanistan's security as well as reconstruction. <http://www.aljazeera.com/cgi-bin/news_service/middle_east_full_story.asp?service_id=8241>

   **11.**   *Bush rebuffs Hamid Karzai's request on troops* (CTV.ca News Staff) – U.S. President George Bush on Monday ruled out Afghan President Hamid Karzai's request to hand over command of U.S. troops to Afghanistan. <http://www.ctv.ca/servlet/ArticleNews/story/CTVNews/1116862579409_33/?hub=Top Stories>

   **12.**   *Bush Pledges More Aid to Afghanistan But tells Afghan President Hamid Karzai U.S. will maintain control of Afghan prisoners and U.S. military operations.* (Paul Richter, Times Staff Writer) – President Bush today pledged to continue U.S. assistance to Afghanistan, but resisted pressure from Afghan President Hamid Karzai to yield control of Afghan prisoners or U.S. military operations in the country. <http://www.latimes.com/news/nationworld/world/la-052305afghan_lat,0,371683.story?coll=la-home-headlines>

      As the above example demonstrates, there is no one way to express the facts that make up a news report. Furthermore, not one story strictly followed the formula of Who,

What, Why, Where, and When, that Google argues is the essence of every headline and story lead. If each of the headlines and story leads had to express the same information and in the same manner, then Google's argument for lack of creative expression might hold true. But this is not the case; there are clearly a vast number of ways to creatively express the news, even in the opening headline and lead sentence(s). The Court must dismiss Google's request for a sweeping edict that headlines and story leads cannot be subject to copyright protection.

**C.    The Copyright Act Does Not Require AFP to Take Actions to Protect Its Work from Google**

The Court, likewise, must dismiss Google's third counterclaim – "Declaratory Judgment of License or Authorization". The crux of that claim is Google's allegation that "AFP has not required subscribers or licensees to activate or implement any 'do not crawl' or other technical features to prevent automatic searching" by Google's web crawlers despite being aware of such crawlers. *See* Counterclaim ¶190. Based on that allegation, Google claims that AFP "licensed or authorized" Google's copyright infringement. *Id.* ¶192. As set forth below, that claim fails as a matter of law.

First, a copyright owner has no affirmative duty to prevent the infringement of its works. Rather, an action for infringement lies for the reproduction of any registered work. *See* 17 U.S.C. §501. If a copyright owner takes additional measures to protect its work, it might have an *additional* cause of action under the Digital Millennium Copyright Act for any circumvention of those measures. *See* 17 U.S.C. §1201(a)(1). But the owner has no obligation to undertake such measures, and the failure to take such measures does not authorize infringement. There is not one scintilla of case law, legislative history, Copyright Office regulation or scholarly commentary, which supports such a proposition.

Second, to the extent that copyright law recognizes an implied license, Google has not alleged any facts that, even if accepted as true, would give rise to such a license. As recently explained by the D.C. Circuit, an implied license may be asserted as an affirmative defense to a copyright infringement claim if the alleged infringer can demonstrate that: "(1) a person (the licensee) requests the creation of a work, (2) the creator (the licensor) makes the particular work and delivers it to the licensee who requested it, and (3) the licensor intends that the licensee-requestor copy and distribute his work." *Atkins v. Fischer*, 331 F.3d 988, 992 (D.C. Cir. 2003) (*quoting Lulirama Ltd., Inc. v. Axcess Broad. Servs.*, 128 F.3d 872, 879 (5th Cir. 1997)). Such cases involve a relationship in which the licensee asked the licensor to create a work for the licensee. *See Atkins*, 331 F.3d at 990 (plaintiff contracted to create a label and six-pack carrier to promote defendant's beer); *Lulirama*, 128 F.3d at 874 (contract for plaintiff to create fifty advertising jingles for defendant); *see also, Nelson-Salabes, Inc. v. Morningside Development, LLC*, 284 F.3d 505, 509 (4th Cir. 2002) (plaintiff provided architectural services pursuant to proposed agreement with defendants); *Effects Assocs., Inc. v. Cohen*, 908 F.2d 555, 556 (9th Cir. 1990) (defendant asked plaintiff to create footage to enhance action sequences for movie).

In this case, Google has not and cannot allege any facts to support even one of the elements for an implied license. Google does not allege that it requested the creation of the works that it pirated from AFP, that AFP made and delivered those particular works to Google, or that AFP intended that Google copy and distribute those works. In fact, Google has not alleged any relationship whatsoever between it and AFP. Hence, regardless of whether AFP includes restrictions in its licenses with third parties (and it

does), as a matter of law, Google has no implied license to copy and reproduce those works.

### III.  CONCLUSION

For the foregoing reasons, the Court should dismiss Google's Tenth Affirmative Defense and First and Third Counterclaim.

                                                  Respectfully submitted,

Dated: June 8, 2005        By:           /s/
                                        Joshua J. Kaufman, Bar No. 945188
                                        Mary Jane Saunders, Bar No. 436608
                                        Jason A. Aquilino, Bar No. 479788
                                        VENABLE LLP
                                        575 7th Street, NW
                                        Washington, DC  20004-1601
                                        202-344-8538 (phone)
                                        202-344-8300 (fax)
                                        jjkaufman@venable.com

                                        *Counsel for Agence France Presse*