IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AGENCE FRANCE PRESSE,  )  <br>    *Plaintiff and Counter Defendant* ) <br> ) <br> v. ) <br> ) <br> GOOGLE INC.,  ) <br>    *Defendant and Counter Plaintiff* ) | Civil Action No.  1:05CV00546 (GK) <br> Next deadline: 9/1/05 (Exchange Witness Lists) |

**GOOGLE'S RESPONSE AND OPPOSITION TO AFP'S MOTION TO DISMISS GOOGLE'S FIRST AND THIRD COUNTERLAIMS AND TO STRIKE GOOGLE'S TENTH AFFIRMATIVE DEFENSE**

## I.  INTRODUCTION AND SUMMARY OF ARGUMENT

The organizational function performed by information location tools, such as Google News, is central to the phenomenal success of the Internet as a medium for the exchange of ideas.  By cataloguing content by subject matter, date, source, and other relevant markers, and providing "links" to the publicly available primary sources, indices such as Google News make the World Wide Web "a vast library including millions of <u>readily available and indexed publications</u>."  *Reno v. ACLU*, 521 U.S. 844, 853 (1997) (emphasis added).  Google News is a tool for the organization and dissemination of ideas—it does not tell the story, but tells people how to find the story.  *See Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 818 (9th Cir. 2003).

Plaintiff AFP's ultimate claim is an extraordinary one—that it enjoys a statutory monopoly in fact-laden titles and lead fragments of news stories.  AFP, in essence, seeks a property right in the news of the day.  And its attack on Google News, an information location tool that merely facilitates public use of website postings <u>that AFP itself has authorized</u>, is equally extraordinary.  Indeed, in the Digital Millennium Copyright Act of 1998, Pub. L. No. 105-304, 112 Stat. 2860, Congress was emphatic that the public interest demands that tools and indices such as Google News be protected and encouraged:

> Information location tools are essential to the operation of the Internet; without them, users would not be able to find the information they need. Directories are particularly helpful[, serving] as a 'card catalogue' to the World Wide Web . . . .

S. Rep. No. 105-190 at 49 (1998).

Having filed an Amended Complaint that purports to state claims of copyright infringement without identifying a single copyrighted work, a single copyright registration, or a single specific act of infringement, AFP now moves to dismiss Google's First and Third Counterclaims. Google's First Counterclaim alleges that whatever AFP headlines and lead fragments AFP ultimately asserts will be shown to be so fact intensive and contain so little expression that they are not protectable by copyright. *See, e.g.*, 17 U.S.C. § 102(b) (facts and ideas not protected); *Feist Publishing Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 350 (1991) ("No author may copyright facts or ideas."). AFP itself has already admitted that "a primary purpose of news stories is to educate the reader about current events or other subjects of political, social, scientific, or other importance" and that "[t]he first sentences of AFP news stories typically contain the most significant facts." AFP's Answer to Google's Counterclaims (filed June 8, 2005) ¶¶ 136, 144. Once the asserted material is identified and its creation examined in discovery, it will be shown to lack copyright protection.

Google's Third Counterclaim alleges that whatever copying AFP ultimately shows has been expressly or impliedly licensed. The existence of such a license depends on the facts, including the terms of AFP's licenses with its licensees, the understandings of AFP and its licensees, and the parties' conduct, *see MacLean Assocs. Inc. v. Mercer-Meidinger-Hansen, Inc.*, 952 F.2d 769, 779 (3rd Cir. 1991), and may involve such factors as consistent use combined with

lack of objection, *see I.A.E., Inc. v. Shaver*, 74 F.3d 768, 775 (7th Cir. 1996).  This counterclaim cannot be adjudicated merely on the pleadings.

AFP argues that, on its view of the law, it is possible to hypothesize facts that would not support the Counterclaims.  AFP's views of the law and facts are untenable, as Google will show.  But even more fundamentally for present purposes, AFP inverts the legal standard governing motions to dismiss, under which AFP must prove beyond doubt that <u>no possible set of facts</u> could support the Counterclaims.   AFP neither attempts nor makes such showing and, indeed, there is every reason to expect discovery to reveal further facts supporting the Counterclaims.

AFP also seeks to strike Google's Tenth Defense which invokes a federal statute (17 U.S.C. § 512(d)) enacted specifically to shield information location tools such as Google News from potential copyright liability.  AFP does not deny that section 512(d) would be relevant if AFP's Complaint were read to allege infringement by virtue of Google News providing links to infringing websites.  Instead, AFP's memorandum represents (at 4) that its Amended Complaint alleges infringement based only on the visual reproduction on the Google News website display of headlines, portions of story leads, or thumbnails of photographs from other websites authorized by AFP.  AFP states that the language of section 512(d) does not directly apply to that theory of infringement.  Although this nondispositive motion should have been resolved by consultation and stipulation pursuant to LCvR 7(m), Google is willing for its Tenth Defense to be struck if the Court will hold AFP to its clarified theory of infringement and to the representations made in its motion.  However, the Congressional policy behind the statute—that information tools including indexes are essential to the efficient operation of the Internet and

must be fostered—will remain highly relevant to other aspects of this case, including the issue of fair use.

## II.  AFP'S MOTION TO DISMISS GOOGLE'S FIRST AND THIRD COUNTERCLAIMS SHOULD BE DENIED.

As this Court has held, a "motion to dismiss for failure to state a claim upon which relief can be granted is generally viewed with disfavor and rarely granted." *FTC v. Capital City Mtg. Corp.,* 321 F.Supp.2d 16, 18 (D.D.C. 2004) (Kessler, J.) (citations omitted).[1]  The motion must be denied "unless it appears beyond a reasonable doubt that the [claimant] can prove no set of facts in support of his claim which would entitle him to relief." *Id.*  So long as the pleading provides "fair notice," any additional information must be sought by discovery, or by a motion for more definite statement. *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512-13 (2002).

AFP does not deny that the Counterclaims provide fair notice of the basis for Google's First and Third Counterclaims.  Nor would such a claim be justified given the failure of AFP's own Amended Complaint to say which articles or images, from which websites, encompassing which copyright registrations, have been infringed by which Google News displays.  Accordingly, AFP's burden is to show that there are no conceivable headlines and lead fragments that would be uncopyrightable, and that there is no possibility that AFP has granted an express or implied license to use its headlines and lead fragments as Google News is claimed to have done.  AFP makes no such showing.

---

[1]   Because AFP simultaneously filed its Answer to the Counterclaims, AFP brought its motion to dismiss under Rule 12(c) rather than Rule 12(b)(6).  In this application, however, Rule 12(c) is a mere "auxiliary device" to permit a post-Answer Rule 12(b)(6) motion, and "the district court will apply the same standards."  Wright & Miller, *Fed. Practice & Procedure* § 1367; *see Byrd v. City of NY,* 2005 WL 1349876 (2d Cir. June 8, 2005) (non-precedential opinion collecting authority that the Rule 12(b)(6) standard applies).

**A.      AFP's Motion To Dismiss The First Counterclaim Fails**

Google's First Counterclaim is firmly grounded in, among other sources, 17 U.S.C. § 102(b) and decades of judicial precedent denying copyright protection to titles and short phrases, particularly where the factual content is high or is so "merged" with the expression, as to render a statutory monopoly inconsistent with principles of free expression. *Baker v. Selden*, 101 U.S. 99, 103 (1879) (denying protection to bookkeeping diagrams because they "are to be considered as necessary incidents" to the bookkeeping ideas themselves); *Concrete Mach. Co. v. Classic Lawn Ornaments, Inc.*, 843 F.2d 600, 606 (1st Cir. 1988) (where "the idea and its expression are inseparable . . . copyright is no bar to copying that expression."). Thus, "those elements that follow naturally from the work's theme, rather than from the author's creativity," 4 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 13.03[F][3] (2005), are not copyrightable and therefore cannot support a claim of infringement. *See Eldred v. Reno*, 239 F.3d 372, 375 (D.C. Cir. 2001) ("No author may copyright his ideas or the facts he narrates."), *aff'd sub nom. Eldred v. Ashcroft*, 537 U.S. 186 (2003).

AFP attempts to build an *expressio unius* argument based on a Copyright Office regulation, *see* AFP Mem. at 6 (citing 37 C.F.R. § 202.1(a)), but it omits the introductory phrase to the entire regulation: "The following <u>are examples</u> of works not subject to copyright . . . ." 37 C.F.R. § 202.1 (emphasis added). Thus, the list does not purport to be comprehensive. Moreover, the statement that "[w]ords and short phrases such as names, titles and slogans" cannot be registered supports Google's position, not AFP's. A headline is aptly described as a short phrase such as a title, and standard references list "title" as a synonym for headline.[2]

---

[2]      WEBSTER'S II NEW COLLEGE DICTIONARY 510 (Houghton Mifflin Co. 2001); Thesaurus.com, http://thesaurus.reference.com/search?q=title (last visited June 22, 2005); The Essential Site for Journalists, Journalism Glossary, http://www.journalism.co.uk/glossary.shtml#h (last visited June 22, 2005); THE BLUEBOOK: A

Abundant judicial precedent supports the view that factual titles, headlines, and other short phrases are not the subject matter of copyright protection. *See Southco, Inc. v. Kanebridge Corp.,* 390 F.3d 276, 285 (3d Cir. 2004) (en banc) (collecting authority). Moreover, it is well established that copyright law provides less protection to fact-intensive materials than to more creative works. *See Harper & Row Publishers, Inc. v. Nation's Ent.,* 471 U.S. 539, 563 (1985); *Pampered Chef, Ltd. v. Magic Kitchen, Inc.,* 12 F.Supp.2d 785, 792 (N.D. Ill. 1998).[3] Further, copyright protection will be denied altogether to expression, even original expression, that merges with the underlying facts or ideas such that the facts could only be expressed in relatively few distinct ways. 1 PAUL GOLDSTEIN, COPYRIGHT § 2.14.4 (2d ed. 2005) ("If only one or a small number of ways exist to describe [an] incident, courts will withhold protection entirely."); *id.* at § 2.7.3 ("[T]he shorter the phrase, the less likely it is to have acceptable substitutes, thus barring protection under the merger doctrine.").

These legal principles were applied to deny copyright protection in *Murray Hill Publ'ns., Inc. v. ABC Communications, Inc.,* 264 F.3d 622 (6th Cir. 2001). In that case, a movie set in Detroit included the voice of a familiar Detroit radio host saying: "Good morning, Detroit. This is J.P. on JR in the A.M. Have a swell day." *Id.* at 627. Although the movie was creative and fully protected, the line was not subject to copyright protection because (*id.* at 633):

---

(Continued . . .)
UNIFORM SYSTEM OF CITATION, R. 16, 16.5(a), at 138, 141 (Columbia Law Review Ass'n et al. eds., 18th ed. 2005).

[3] This concept often is referred to as "thin copyright." *See, e.g., Well-Made Toy Mfg. Corp. v. Goffa Intern. Corp.,* 210 F. Supp.2d 147, 163 (E.D.N.Y. 2002) ("thin copyright protection is appropriate where works reflect scant creativity," such as "compilations of facts"). Once AFP identifies the registered works or portions thereof that it is asserting, and the parties take discovery on the facts relevant to determining whether that material is original and merits copyright protection, even if AFP succeeds as to copyrightability any such protection will be "thin copyright."

> The Line is nothing more than a short phrase or slogan, dictated to some degree by the functional considerations inherent in conveying the desired information about [whose] morning show, what radio station, and what time.

AFP cites (at 7) scattered precedent suggesting that highly fanciful and distinctive sentences such as "When there is no room in hell . . . the dead will walk the earth" may be protectable.[4]  AFP's legal premise is doubtful, but more fundamentally, AFP does not establish that <u>its</u> titles or lead fragments to be asserted in this case (not yet even identified) all are comparably <u>creative</u> and <u>non-factual</u>. To the contrary, AFP's memorandum concedes (at 7) that its lead fragments are fact intensive, as one would expect from the news.  Common experience teaches that news headlines and lead paragraphs typically provide basic facts that then are developed, explained, and interpreted in the article.  Indeed, AFP's examples 1 through 12 (at pages 9-10 of its memorandum), prove Google's point.  They may present different facts, but they are facts nonetheless.  Karzai met with Bush, Bush and Karzi quoted, *etc*.  The flaw in AFP's argument is well illustrated by AFP's home page as it existed as this paragraph was drafted (6:15 p.m. EDT on June 16, 2005).  The screen shot (Exhibit A hereto) displayed had the following headline and lead sentence:

> **EU agrees to extend ratification deadline: sources**
>
> A "very large majority" of EU leaders agreed to extend a deadline to ratify the bloc's embattled constitution beyond the target date of November 6, sources said.

And the rolling headline at the top displayed: "5.3 earthquake strikes east of Los Angeles."  Both of these displays were links to complete articles on the subjects indicated.

---

[4]     Notwithstanding the context of its citation, AFP presumably realizes that sentences dealing with the dead walking the earth and extra-terrestrials phoning home are non-factual.

Obviously these are short and intensely factual statements largely dictated by functional considerations inherent in communicating the desired information. Whether or not the underlying articles (or website as a whole or some data compilation) qualified for copyright protection, these brief and fact-intensive phrases do not.[5] And these two examples are by no means the shortest or most clearly factual examples that may be proved. The Exhibits to AFP's First Amended Complaint are full of similar examples of non-copyrightable headlines, including such short phrases as "Oil Ends Near Record," "MCI Paying Attention to Qwest," "Famous Japanese businessman arrested," Exhibit A1, "Legal victory for Microsoft," and AFP's own "Pope stay in hospital 'extended' till Easter," Exhibit A2, and "Le mystere Julia," Exhibit A3. Strikingly, AFP does not cite a single case holding that such short and intensely factual statements are protectable, nor does Google know of any.

Thus, AFP has failed to show that no conceivable proof could possibly sustain the First Counterclaim, and AFP's first motion to dismiss must be denied.

### B.  Similarly, AFP's Motion To Strike The Third Counterclaim Lacks Merit

For similar reasons, AFP's motion to dismiss the Third Counterclaim (License or Authorization) must fail. Google's counterclaim is not, as AFP claims (Mot. at 2), based on a purported bright-line rule requiring copyright owners to "install protective shields around" all copyrighted works. Rather, as Google alleges (¶¶ 98, 187, 188), "AFP has authorized or licensed the uses of its works alleged in the Complaint . . . _inter alia_ through AFP's agreements with its subscribers . . . allowing widespread Internet copying, distribution, and display of works . . .

---

[5]  AFP's Amended Complaint is carefully obscure as to the precise identity of the registered works and of the works it claims are infringed. For example, although AFP's motion asserts that "AFP headlines and leads" are "integral parts of stories," its First Amended Complaint alleges separate counts for "infringing the copyrights of AFP's headlines," Complaint, Count II, ¶ 59, and for "infringing the copyrights of AFP's story leads," _id.,_ Count III, ¶ 67, and nowhere alleges infringement of any copyrights in "stories." Clarification of the registered works at issue may well demonstrate other fundamental flaws in AFP's claims.

allegedly owned by AFP." (Emphasis added). In addition to facilitating and encouraging copying, Google alleges (¶¶ 190 - 91) that AFP knowingly and <u>intentionally</u> does not require or encourage these websites to implement readily available "technical features to try to prevent the automatic searching, scanning, indexing, and/or other use" because, *e.g.*, it knows its licensees value such indexing. Under all of the circumstances, Google alleges (¶192) that its use "is licensed or authorized by AFP, <u>implicitly if not explicitly</u>, based, <u>inter alia</u>, upon AFP's conduct, knowledge, and contracts with third parties." (Emphasis added).

AFP argues that this Counterclaim is precluded by the D.C. Circuit's holding that an implied copyright license arises where a work is created at the request of a publisher and delivered with the knowledge that publication is intended. *Atkins v. Fischer,* 331 F.3d 988, 992 (D.C. Cir. 2003). But *Atkins* merely declared a rule for one common fact pattern; it did not hold or even suggest that this is the only way an implied license might arise. *Cf. Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 66-67 (1996). Indeed, courts have rejected the very argument AFP makes here. *See Nat'l Assn. For Stock Car Auto Racing, Inc. v. Scharle*, 356 F. Supp. 2d 515, 527 (E.D. Pa. 2005) ("[Plaintiff argues] that in every case in which a court has found the existence of an implied license, there has been evidence of direct contact between the licensor and licensee, [but] this court can find no case that injects a privity requirement into the implied license doctrine, and it declines to be the first to do so.").

An implied license is merely an implied (in fact) contract and may arise in myriad circumstances. *See, e.g.*, *Key Maps, Inc. v. Pruit,* 470 F.Supp. 33 (S.D. Tex. 1978) (copyright owner who promised to supply urgently needed copies and failed to perform, impliedly licensed customer to copy elsewhere.). "The existence and scope of an implied license thus necessarily depends on the facts of each individual case." *Herbert v. United States,* 32 Fed. Cl. 293, 298 (Ct.

Cl. 1994). It is a "fact sensitive question which makes it hard to generalize from case to case." Howard B. Abrams, 2 *The Law of Copyright* § 16.21 (2004); *see also Telecomm Tech. Servs., Inc. v. Siemens Rolm Commc'ns., Inc.,* 66 F.Supp.2d 1306, 1325 (N.D. Ga. 1998) (the issue is "fact intensive" and typically "cannot be resolved as a matter of law"); *Key Maps*, 470 F. Supp. at 39 (turns on the "totality of the circumstances").[6]

AFP argues that a copyright owner's failure to take affirmative steps to prevent infringement, standing alone, is not sufficient to imply a license. But that argument is a strawman. AFP does not address the point that such failure may be relevant when the copyright owner also has taken other affirmative steps to encourage widespread copying and public display, as AFP allegedly has done here. While it may be that failure to object is not itself sufficient to grant a license, such a failure has weight when combined with other factors. *I.A.E.*, 74 F.3d at 775.

At minimum, Google has reason to believe that (i) AFP has authorized third parties (its licensees) to place articles and photographs, in the open, on the Internet, (ii) for general public display and reproduction, (iii) knowing that search engines and directories routinely and customarily search news websites and provide links to those websites that include, among other things, headlines, lead fragments and thumbnail images, and (iv) that well-known, industry standard protocols exist to prevent the provision of such links should AFP have wanted its licensees to do so. Discovery is likely to reveal other facts that add to this evidence that AFP knew that its headlines, story leads or fragments thereof, and thumbnails would be used to link to its licensees' websites and approved of such use.

---

[6] The Counterclaim's reference to use being licensed or otherwise "authorized" reflects that the concept of implied license shades into concepts of estoppel. Because the Counterclaim is readily defensible with respect to licensing, there is no need to discuss further the estoppel aspect.

In any event, the Third Counterclaim is not limited to implied licenses. AFP licenses with subscribers may very well <u>expressly</u> authorize its material to be used in the manner challenged in AFP's Complaint (with Google being a beneficiary of such express licenses). Many of AFP's authorized sites may well expressly authorize the uses by Google News; obviously many if not all such sites impose little or no restrictions given that the content is posted free and clear for any user to download into cache memory, publicly display, download permanent copies to a hard drive, etc. Because AFP's Amended Complaint utterly fails even to identify which articles posted by which newspapers were supposedly infringed by Google, development of the facts (including examination of AFP's licenses and surrounding circumstances) must await discovery. The Third Counterclaim gives fair notice that Google will assert both express and implied licenses when the facts become known. AFP has not shown that no such license can possibly be proved, so its dismissal motion must fail.

### III. BASED ON AFP'S REPRESENTATION THAT ITS CLAIMS GO ONLY TO THE GOOGLE NEWS DISPLAY ITSELF, DEFENSE 10 MAY BE STRICKEN.

AFP's motion to strike Google's Tenth Defense—that Google is a "service provider" protected from infringement liability by 17 U.S.C. §512(d)—is a non-dispositive motion for which AFP failed to conduct the pre-filing consultation required by LCvR 7(m). See *Senaca Nation of Indians v. New York,* 1994 WL 688262 at *3 n.1 (W.D.N.Y. Oct. 28, 1994) ("Motions to strike defenses are treated as non-dispositive.") If AFP had consulted and offered to clarify its Amended Complaint, the Tenth Defense could have been dealt with by stipulation.[7]

---

[7] Although AFP speaks of its motion as one to "dismiss" the defense, the terminology suggested by Rule 12(f) is a motion to strike. Such a motion is equally disfavored and may be granted only where it is clear that no facts may be proved that might sustain the defense. *See Chittenden Trust Co. v. Cabot,* 2004 WL 2287763 (D. Me. Oct. 12, 2004).

-11-

AFP's memorandum now represents (at 4) that the only infringement alleged by its Amended Complaint arises from the visual reproduction on the Google News website display of headlines, portions of story leads, or photographs allegedly copied from websites authorized by AFP. AFP has also represented in its memorandum (at 4) that the sites with AFP material to which Google linked were all non-infringing because they were all "authorized." <u>So long as AFP is held to those representations</u>, Google will not argue here that section 512(d) itself precludes liability and will agree that its Tenth Defense may be stricken.[8]

This must not be misunderstood, however, to suggest that section 512(d) is irrelevant. To the contrary, the Senate Report stresses "[i]nformation location tools are essential to the operation of the Internet; without them users would not be able to find the information they need." S. Rep. No. 105-190 at 49 (praising a "'card catalog' to the Internet").[9] Thus, Professor Nimmer's treatise states:

---

[8]   The text of section 512(d) expressly protects Internet service providers whose information tools provide links to infringing sites. It would have made no sense for Congress thus to have protected service providers against such derivative liability if Congress thought their online indexes, directories, or card catalogs infringed directly. The implication that Congress deemed such services to be non-infringing is so strong that some have argued that section 512(d) should be construed to enact it into positive law. Google News need not press that argument here because fair use and related principles can accommodate Congress' intent. *See* H.R. Rep. No. 94-1476, which discusses fair use as follows:

> [S]ince the doctrine is an equitable rule of reason, no generally applicable definition is possible, and each case raising the question [of fair use] must be decided on its own facts…. Beyond a very broad statutory explanation of what fair use is and some of the criteria applicable to it, the courts must be free to adapt the doctrine to particular situations on a case-by-case basis.

As the House Report indicates, the Copyright Act provision recognizing the fair use doctrine is explicit that the statutory factors are non-exclusive. 17 U.S.C. § 107.

[9]   Such "online directories play a valuable role in assisting Internet users to identify and locate the information they seek in the decentralized and dynamic networks of the Internet." S. Rep. No. 105-190 at 48. The Digital Millennium Copyright Act of 1998, as a whole, was "designed to facilitate the robust development and world-wide expansion of electronic commerce, communications, research, development, and education." *Id.* at 1-2. Title II, which

> [G]iven the special Congressional solicitude shown under Section 512 for indexing, <u>courts should scrutinize with great care any claim that a legitimate indexer is liable for infringement</u>. Whether under the doctrine of fair use or otherwise, *bona fide* sites instead should be immunized from liability, in order not to chill them from serving such laudable purposes as "serving as a 'card catalogue' to the World Wide Web.

NIMMER § 12B.05[B] (emphasis added).

Thus, Google will rely on section 512 and its legislative history as one of many reasons why Google News is a highly favored fair use, as important to the web as a card catalog is to a library—indeed, to a library in which the books are shelved in random order and the contents of each volume keeps changing.

### IV.    CONCLUSION

Because Google's First and Third Counterclaims rest on solid legal foundations and AFP has not shown that Google will not be able to offer facts to support those Counterclaims, the motion to dismiss should be denied. Provided that AFP's claims of infringement are based on the material visually reproduced on the Google News website display itself and AFP is held to its representation that the websites to which Google News linked were authorized, the Tenth Defense may be stricken, although section 512 and its legislative history are highly relevant to other issues in this case, including the issue of fair use.

---

(Continued . . .)
contained section 512 and related provisions "ensures that the efficiency of the Internet will continue to improve and that the variety and quality of service on the Internet will expand." *Id.* at 2.

-14-

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: June 22, 2005 | /s/ Thomas W. Kirby |
|  | Andrew G. McBride (Bar No. 426697)<br>Bruce G. Joseph (Bar No. 338236)<br>Thomas W. Kirby (Bar No. 915231)<br>Scott E. Bain (Bar No. 466657)<br>WILEY REIN & FIELDING LLP<br>1776 K St. NW<br>Washington, DC  20006<br>202.719.7000<br>Fax: 202.719.7049 |
|  | Attorneys for Defendant<br>Google Inc. |