# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Agence France Presse,<br>1015 15th St NW,<br>Washington, DC 20005<br><br>    Plaintiff,<br><br>v.<br><br>Google Inc.,<br>a California Corporation,<br>1600 Amphitheatre Pkwy,<br>Mountain View, CA 94043<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

CIVIL ACTION NO.:  1:05CV00546 (GK)
Next Due Date: March 21, 2006 (Status Conference)

Joshua J. Kaufman, Bar No. 945188
Mary Jane Saunders, Bar No. 436608
VENABLE LLP
575 7th Street, NW
Washington, DC  20004-1601
202-344-8538 (phone)
202-344-8300 (fax)
jjkaufman@venable.com
mjsaunders@venable.com

*Counsel for Agence France Presse*

Dockets.Justia.com

# TABLE OF CONTENTS

**Page(s)**

Case Overview ................................................................................... 1

ARGUMENT ....................................................................................... 5

    1.    News Reporting Qualifies for Copyright Protection ......................... 5

    2.    Headlines are Protected under Copyright .......................................... 5

    3.    Headlines are Protected under Copyright .......................................... 6

    4.    Headlines are not Unprotected "Short Phrases" ............................... 10

    5.    News Headlines are not Unprotected "Titles" .................................. 11

    6.    Copyright Law Protects Imbedded Headlines ................................... 14

    7.    Copyright Law Protects Stand-Alone Headlines .............................. 17

    8.    Agence France Presse Representative Headlines Are Protected ....... 18

    9.    Agence France Presse Guidelines are No Bar to Copyright
        Protection ..................................................................................... 20

    10.    Agence France Presse Licenses Its Headlines .................................. 21

Conclusion .......................................................................................... 22

# TABLE OF AUTHORITIES

<u>Page(s)</u>

<u>Cases</u>

*Feist Publication v. Rural Telephone Service Co.,*
    499 U.S. 340 (1991) ............................................................... 6

*Harper & Row, Publishers, Inc. v. Nation Enterprises,*
    471 U.S. 539 (1985) ...............................................................9,14,15

*Harper & Row, Publishers, Inc. v. Nation Enterprises,*
    557 F. Supp. 1067, 1072 (SDNY 1983) ..................................... 14,15,
    16,17

*Lenmark International, Inc., v. Static Control Components, Inc.,*
    387 F.3d 522 (6th Cir. 2004) ...................................................... 10

*Murray Hill Publications, Inc. et al v. ABC Communications, Inc.,*
    264 F.3d 622 (6th Cir. 2001) ...................................................... 22

*Narell v. Freeman,*
    872 F.2d 907 (9th Cir.1989) ...................................................... 10

*Nihon Keizai v. Shimbun, Inc. v. Comline Businesses Data, Inc.,*
    166 F.3d 65 (2d Cir.1988) ...........................................................14,17,18

*Nutt v. National Institute for the Improvement of Memory,*
    31 F.2d 236 (2d Cir. 1929) ........................................................ 10

*Salinger v. Random House, Inc.,*
    811 F.2d 90 (2d Cir.1986) .......................................................... 9

*Wainwright Securities, Inc. v. Wall Street Transcript Corp.,*
    558 F.2d 91 (2nd Cir. 1977), *cert. denied*, 434 U.S. 1014 (1978)................ 9

*Warren Pub., Inc. v. Microdos Data Corp.,*
    115 F.3d 1509 (11th Cir.) (*en banc*), *cert. denied*, 522 U.S. 963 (1997) ...... 9

**Statutes and Regulations**

17 U.S.C § 102(a) (1) ................................................ 5

17 U.S.C. § 102(b) ................................................ 5

17 U.S.C. § 101 ................................................ 5

37 CFR 202.1 ................................................ 6

**Other Authorities**

1 *Nimmer on Copyright* § 2.01 [B] 3 ................................................ 3

1 *Nimmer on Copyright* §§ 2.11[D] ................................................ 9

1 *Nimmer on Copyright* § 2.16 ................................................ 12

1 *Nimmer on Copyright* § 3.03 ................................................ 9,10

Copyright Information Circular 34, *Copyright Protection Not Available for Names, Titles, or Short Phrases* ................................................ 10

Oxford American Dictionary, Oxford University Press, Inc. 1980 ................................................ 11

1 *Goldstein on Copyright* § 2.14.4 ................................................ 13

Copyright Information Circular 65, *Copyright Registration for Automated Databases* ................................................ 19

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Agence France Presse,<br>1015 15th St NW,<br>Washington, DC 20005 | )<br>)<br>) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO.:  1:05CV00546 (GK) |
| | ) | |
| v. | ) | Next Due Date: March 21, 2006 (Status |
| | ) | Conference) |
| Google Inc.,<br>a California Corporation,<br>1600 Amphitheatre Pkwy,<br>Mountain View, CA 94043 | )<br>)<br>)<br>) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## RESPONSE IN OPPOSITION TO GOOGLE, INC.'S
## MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff Agence France Presse ("AFP") hereby responds in opposition to Defendant

Google, Inc.'s ("Google's") Motion for Partial Summary Judgment.  Google has not shown

that it is entitled to a blanket rule that all headlines are unprotected under U.S. copyright

law; therefore, this Court should deny Google's Motion.

### Case Overview

This is a claim for copyright infringement and misappropriation of hot news.  It

arises from Google's reproduction and display of AFP headlines, story leads and

photographs on an Internet news aggregation service called Google News.  Google

obtains all of the content it publishes on Google News by copying headlines, story leads

and photographs from other news publications.[1]

---

[1] In an obvious attempt to minimize its misappropriation of copyrighted material belonging to others, Google repeatedly claims that it is not reproducing and displaying protected expression but merely

Google reports the news of the day three different ways. First, Google copies and displays story leads and imbedded headlines from third party publications. Google may also include a news photograph. Google's second approach is to copy and display just the stand-alone headlines from third party publications. The third approach Google follows is to identify news sources on a topic by publication name. Google then provides a general link to the underlying publication. What follows is an example of Google News with Google's use of imbedded headlines marked by arrow number 1, Google's use of stand-alone headlines marked by arrow number 2, and Google's listing of publication names and links marked by arrow number 3.

---

providing an index of hyperlinks ("links") to news stories, organized by topic to allow users quickly to find a variety of different sources for any given news topic. *See* Google's Answer and Counterclaims at page 1. This case is not about whether Google can create a non-infringing list of news publications and provide a link to a third party news story without copying the expression contained in the news story. If Google wants to index the sources of the world's news by topic and provide links to those publications by name or category, it can do so easily and without fear of infringement. But Google has done a lot more than offer an index of topics and "links" to publications. Google is reproducing protected expression from <u>and</u> providing a link to the underlying news publication.

Page 2 of 27



There is no dispute that until AFP filed this lawsuit, Google included verbatim copies of headlines, story leads and photographs from AFP news stories on Google News.  Google copied and displayed AFP headlines in imbedded and stand-alone format.

By its Motion, Google is trying to avoid a finding of infringement by convincing this Court that all headlines, whether in imbedded or stand-alone format, lack originality sufficient to warrant protection under copyright.  If this Court were to accept Google's position that all headlines are without copyright protection any newspaper could simply take a copy of the *New York Times* and without altering a single letter use all of the *Times*' headlines in its own publication.

Google's Motion suggests that this is an "open and shut case" ripe for summary judgment, but the opposite is true.  Indeed, AFP's headlines have value; otherwise

Google would not have been motivated to copy them. The fact that Google copied AFP's headlines, suggests that they have originality sufficient to support a copyright. *See* 1 *Nimmer on Copyright* § 2.01 [B]. ("It may be concluded that if any author's independent efforts contain sufficient skill to motivate another's copying, there is *ipso facto* a sufficient quantity of originality to support a copyright.")

This Court should also not be taken in by Google's efforts to wrap itself in a "public interest mantle" and avoid liability by arguing that by copying the works of others, it provides a benefit to society. Google copied AFP headlines without any changes, revisions or by original input of its own. Considering that society has a strong interest in fostering creative expression, it is unclear how Google's wholesale copying furthers any societal interest. Google is a profit motivated enterprise on a quest for dominance in the field of search engines. Google does not have the right to take what it wants without regard to third party intellectual property rights, even if this approach makes Google's search engines more attractive to end users. AFP is not trying to prevent Google from offering "user friendly" search engines or providing people with information. AFP simply believes that in executing on its mission to tame the Internet, Google can (and should) respect the intellectual property rights of third parties.

Ironically, Google itself provides the model on how this can be accomplished by the use of publication names as links (see arrow three in the example above). Below is an example on how Google can present a user-friendly index to thousands of news sites without violating the rights of any third party.

———————————



## Saddam Trial

Hindu - ABC News - CBC News - Reuters AlertNet -

Globe and Mail - Reuters - Christian Science Monitor - BBC News -

MSNBC - Reuters.uk - ABC News - San Jose Mercury News - **all 4,761 related »**

——————

If Google can offer information to the public without infringing third party rights, then why does Google copy the works of others -- because it understands and appreciates their commercial appeal and economic value.

## ARGUMENT

### 1.    News Reporting Qualifies for Copyright Protection

The overall theme of Google's Motion is that little to no copyright protection applies to news reporting, and absolutely none is available for the headlines used in news reports.  Google is wrong on both points.

With a few limited exceptions that do not apply here, copyright protection is available for *all* original works of authorship, including literary works.  *See* 17 USC § 102(a) (1); *see also* 17 U.S.C. § 102(b) for the limited exceptions ("In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work.")  The Copyright Act defines "literary works" as "works, other than audiovisual works,

expressed in words, numbers, or other verbal or numerical symbols or indicia, regardless of the nature of the material objects, such as books, periodicals, manuscripts, phonorecords, film, tapes, or cards in which they are embodied." 17 U.S.C. § 101. This definition encompasses news reports. This definition does not make an exception for or exclude news headlines, which are an integral part of news reporting, from the category of protected works.

### 2.    Headlines are Protected under Copyright.

There is nothing in the Constitution, the Copyright Act, the legislative history for the Copyright Act or Copyright Office regulations that supports Google's position that there is no copyright protection for news headlines. For example, the Copyright Office regulations defining what works are not subject to copyright does not mention "headlines":

> (a) Words and short phrases such as names, titles, and slogans; familiar symbols or designs; mere variations of typographic ornamentation, lettering or coloring; mere listing of ingredients or contents;
>
> (b) Ideas, plans, methods, systems, or devices, as distinguished from the particular manner in which they are expressed or described in writing; "

*See* 37 CFR 202.1. Considering the widespread nature and importance of headlines, the fact that Copyright Office regulations do not list headlines is a rather glaring omission if unintentional. Moreover, subsection (b) of the regulation specifically states that the expression or description of a non-protectable idea, plan, method, system or device is protected.

### 3.    Headlines are Fact-Based Compilations.

News headlines are an original and creative compilation of news facts.  Copyright protection should certainly not be withheld from news headlines just because they are comprised of facts.  It is well-settled that copyright protection extends to fact-based compilations.  *Feist Publication v. Rural Telephone Service Co*., 499 U.S. 340, 348 (1991).

Any fact-based compilation, including a headline, can be protected under copyright law if the author makes original choices in the selection and presentation of the facts.  In the creation of a headline, one must take a multitude of facts, distill them, interpret them, make a determination as to which to use, which to emphasize, determine which facts are the critical facts, which are the important facts, and how to capture the essence of a story that can be thousands of words long in a manner which entices the public to read the article.  This undertaking is no mere mechanical effort, but takes a great degree of creativity.  This point was clearly demonstrated in AFP's Motion to Dismiss at page 9 and 10[2], where it provided a typical example of the way the exact same news story

---

[2] For the Court's convenience the examples are duplicated below:

**1.** *Karzai strikes out with Bush* (CBC News) – There was little movement on a series of issues between the United States and Afghanistan during a meeting in Washington, comments by the leaders of the two countries indicated on Monday. <http://www.cbc.ca/storyview/MSN/world/national/2005/05/23/bush-karzai050523.html>

**2.** *Bush, Karzai agree on US military presence in Afghan*  (Sify.com) – US President George W. Bush and Afghanistan's President Hamid Karzai signed a "strategic partnership" enabling long term American involvement in Afghanistan's security as well as reconstruction.  <http://sify.com/news/fullstory.php?id=13806702>

**3.** *Afghan President Declines to Blame U.S. for Abuse* (Timothy Williams) - President Hamid Karzai of Afghanistan met with President Bush today and said that he did not hold the United States to blame for the abuse of Afghan prisoners by American soldiers and that recent anti-American rioting in his country was aimed at destabilizing

his government. <http://www.nytimes.com/2005/05/23/international/asia/23cnd-karzai.html?hp&ex=1116907200&en=eb59bb60d6cb8db9&ei=5094&partner=homepage>

4. ***Bush, Karzai Formalize Partnership Focused on Afghan Progress*** (Donna Miles, American Forces Press Service) – The presidents of the United States and Afghanistan today signed an agreement that establishes a long-term relationship designed to promote ongoing progress in Afghanistan. <http://www.defenselink.mil/news/May2005/20050523_1284.html>

5. ***Tension behind Bush-Karzai talks***  (Justin Webb, BBC News) – This was a meeting of friends - genuine friends - whose relationship is based on mutual respect.  But the meeting was taking place against a backdrop of real tensions.  President Karzai sought to address and reduce those tensions. <http://news.bbc.co.uk/2/hi/south_asia/4573911.stm>

6. ***Bush, Karzai Discuss Military Operations, Opium Trade*** (VOA News) – President Bush says American troops in Afghanistan will remain under U.S. control, despite indications from Afghan President Karzai that he would like more authority over them. <http://www.voanews.com/english/2005-05-23-voa33.cfm>

7. ***Bush Calls for Closer Ties with Afghanistan*** (Paula Wolfson) – President Bush and Afghan President Hamid Karzai have agreed to seek stronger political, economic, and security ties.  <http://www.voanews.com/english/2005-05-23-voa34.cfm>

8. ***Bush, Karzai paper over differences on U.S. troops*** (Steve Holland, Reuters) – President George W. Bush and Afghan President Hamid Karzai papered over their differences over U.S. military operations in Afghanistan on Monday and agreed that American forces will have "freedom of action." <http://www.alertnet.org/thenews/newsdesk/N23242548.htm>

9. ***US, Afghan presidents meet amid protests*** (Age) – President George W Bush held up Afghanistan as a model of emerging democracy, but President Hamid Karzai went to their meeting waving a list of grievances ... <http://www.theage.com.au/news/World/US-Afghan-presidents-meet-amid-protests/2005/05/24/1116700674068.html>

10. ***Bush, Karzai sign pact for U.S. presence in Afghanistan***  (Al Jazerra) – U.S. President George Bush and his Afghani counterpart Hamid Karzai signed a "strategic partnership" enabling long term American involvement in Afghanistan's security as well as reconstruction. <http://www.aljazeera.com/cgi-bin/news_service/middle_east_full_story.asp?service_id=8241>

11. ***Bush rebuffs Hamid Karzai's request on troops*** (CTV.ca News Staff) – U.S. President George Bush on Monday ruled out Afghan President Hamid Karzai's request to

generated twelve different headlines and story leads when created by various news

entities reporting on the same story.  If the creation of a headline was purely mechanical,

completely devoid of the necessary originality requires for copyright, then we would see

an identity or near identity of each headline for the same news event.  The example AFP

provided was not an isolated example, if the court would take notice of any collection of

newspapers or stories and identify the same story, it will almost universally find unique

and creative differences between the headlines from one publication to the next.

 Like any fact-based work, copyright in a news story protects the manner of

expression, the author's analysis or interpretation of events, the way he structures his

material and marshals facts, his choice of words and the emphasis he gives to particular

developments.  *Wainwright Securities, Inc. v. Wall Street Transcript Corp.*, 558 F.2d 91,

95-96 (2d Cir. 1977), *cert. denied*, 434 U.S. 1014 (1978).  The same standard applies to

the news story, the story lead and the headline.  So long as the choices are made

independently and entail a minimal degree of creativity, the resulting news story, story

lead and headline are protected.  *See Nimmer* §§ 2.11[D] and 3.03.  Thus, even a headline

that includes only an ordinary combination of words, may, when viewed as a whole,

display a sufficient decree of originality to qualify for copyright protection.  *See Salinger*

---

hand over command of U.S. troops to Afghanistan.
<http://www.ctv.ca/servlet/ArticleNews/story/CTVNews/1116862579409_33/?hub=Top Stories>

 **12.** ***Bush Pledges More Aid to Afghanistan*** *But tells Afghan President Hamid Karzai U.S. will maintain control of Afghan prisoners and U.S. military operations*. (Paul Richter, Times Staff Writer) – President Bush today pledged to continue U.S. assistance to Afghanistan, but resisted pressure from Afghan President Hamid Karzai to yield control of Afghan prisoners or U.S. military operations in the country.
<http://www.latimes.com/news/nationworld/world/la-052305afghan_lat,0,371683.story?coll=la-home-headlines>

*v. Random House, Inc.,* 811 F.2d 90, 98 (2d Cir.1986) ("[i]n almost all of those instances where the quoted or paraphrased passages from Salinger's letters contain an "ordinary" phrase, the passage as a whole displays a sufficient degree of creativity as to sequence of thoughts, choice of words, emphasis, and arrangement to satisfy the minimal threshold of required creativity.")  Indeed, the Supreme Court has held that sequences of words will qualify for copyright protection if they merely exceed that which is minimally necessary to disseminate the facts.  *Harper & Row, Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 564 (1985).

The threshold for "originality" necessary to support a copyright is low.  S*ee Warren Pub., Inc. v. Microdos Data Corp*., 115 F.3d 1509, 1524 (11th Cir.) (*en banc*), cert. *denied*, 522 U.S. 963 (1997) ("the line to be drawn includes almost any independent effort on the side of sufficient originality").  Protection is available for the "association, presentation, and combination of the ideas and thought which go to make up the [author's] literary composition."  *Nutt v. National Institute for the Improvement of Memory*, 31 F.2d 236, 237 (2d Cir. 1929).  In *Lenmark International, Inc. v. Static Control Components, Inc*., 387 F.3d 522, 539 (6th Cir. 2004), and in the context of a challenge to the originality of a computer program, the Court of Appeals for the Sixth Circuit explained that  "[t]o discern whether "originality" exists in the work, the court should ask whether the ideas, methods of operation and facts of the program could have been expressed in any form other than that chosen by the programmer, taking into consideration the functionality, compatibility and efficiency demanded of the program."

Google is not suggesting that its copyright extends beyond its original expression of particular historic facts.  Google acknowledges that "historical facts and theories may

be copied, as long as the Defendant does not, 'bodily appropriate' the expression of the

Plaintiff. …."  *Narell v. Freeman,* 872 F.2d 907, 910-911 (9th Cir.1989); *Nimmer* § 3.03

("Others may copy the underlying facts from the publication, but not the precise words

used to present them.")

### 4.    Headlines are not Unprotected "Short Phrases."

There is nothing to Google's argument that headlines are unprotected "short

phrases." Copyright Information Circular 34, which is the Copyright Office's public

document explaining what is and is not protected under copyright shows why Google's

argument is wrong.  *See* Copyright Information Circular 34, *Copyright Protection Not*

*Available for Names, Titles, or Short Phrases*.  Circular 34 provides as follows:

> **"NAMES, TITLES, AND SHORT PHRASES NOT PROTECTED BY COPYRIGHT**
> - Names, titles, and short phrases or expressions are not subject to copyright protection.  Even if a name, title, or short phrase is novel or distinctive or if it lends itself to a play on words, it cannot be protected by copyright. The Copyright Office cannot register claims to exclusive rights in brief combinations of words such as:
> - Names of products or services
> - Names of businesses, organizations, or groups (including the name of a group of performers)
> - Names of pseudonyms of individuals (including pen name or stage name)
> - Titles of works
> - Catchwords, catchphrases, mottoes, slogans, or short advertising expressions
> - Mere listings of ingredients, as in recipes, labels, or formulas. When a recipe or formula is accompanied by explanation or directions, the text directions may be copyrightable, but the recipe or formula itself remains uncopyrightable."

Circular 34 shows that by its use of the terms "names," "titles," "short phrases"

and "brief combinations of words," the Copyright Office is saying that it will deny

copyright protection for trademarks, which are "catchwords, catchphrases, mottoes,

slogans, or short advertising expressions." The fact that the Copyright Office will not accept a trademark as a copyrighted work does not mean that the Copyright Office will treat a news headline the same way.

**5.    News Headlines are not Unprotected "Titles."**

Headlines are not unprotected "titles" as that term is used in Copyright law. A title is the name of something, a device by which you refer to a film, book or other article.[3] For example, one might say, "I want a copy of *Gone with the Wind,*" or "Did you see *Star Wars Returns XXII*?" A review of over a forty dictionaries under the word "Title" did not reveal a single one which included a headline in its description.[4]

---

[3] "title (ti-tel) n. 1. the name of a book or poem or picture etc…" Oxford American Dictionary, Oxford University Press, Inc. 1980.

1.  [4] Merriam-Webster Collegiate
2.  Yourdictionary.com
3.  Oxford American Dictionary
4.   Encarta® World English Dictionary, North American Edition
5.  Compact Oxford English Dictionary
6.  Merriam-Webster's Online Dictionary, 10th Edition
7.  Cambridge International Dictionary of English
8.  The Wordsmyth English Dictionary-Thesaurus
9.  The American Heritage® Dictionary of the English Language
10. Infoplease Dictionary
11. Dictionary.com
12. Online Etymology Dictionary
13. UltraLingua English Dictionary
14. Cambridge Dictionary of American English
15. Wikipedia, the Free Encyclopedia]
16. Online Plain Text English Dictionary Webster's Revised Unabridged, 1913 Edition
17. Rhymezone
18. AllWords.com Multi-Lingual Dictionary Webster's 1828 Dictionary
19. Columbia Encyclopedia, Six Edition
20. 1911 edition of the Encyclopedia Britannica: WordNet 1.7 Vocabulary Helper
21. LookWAYup Translating Dictionary/Thesaurus
22. Encyclopedia.com http://www.thesaurus.com/roget/VI/877.html
23.  Rogets Thesaurus
24.  ArtLex Lexicon of Visual Art Terminology
25. The Organon: A Conceptually Indexed Dictionary (by Genus and Differentia)
26. WORDS OF ART ODLIS: Online Dictionary of Library and Information Science
27. MoneyGlossary.com
28. Law.com Dictionary
29. INVESTORWORDS  THE 'LECTRIC LAW LIBRARY'S REFERENCE ROOM .

Nowhere in *Nimmer's* section on "Titles," *Nimmer* § 2.16, does he even once referred to headlines as a form of a title, nor does it seem that in any of the hundreds of cases sited are headlines equated with titles. The other leading copyright author, Paul Goldstein, goes on at lengths in describing what is not protected in a news story but also never includes headlines in the litany of forbidden fruit. *See* 1 *Goldstein on Copyright* § 2.14.4

Simply put, headlines are parts of stories, not identifiers like titles. One does not say, "I want to a copy of "Hurricane Wanda threatening Florida Coast." Instead, one says, "Did you see the story on hurricane Wanda?" Headlines are parts of stories not identifiers like titles. The headline is the overture of the Opera not its title. One goes and sees, *La Boehm*, not the compilation of key portions of the entire opera played first.

Even though the Copyright Office has added titles to its list of non copyrightable material, this blanket approach has been criticized by leading scholars as going too far. "The problem with a rule that categorically denies copyright protection to titles is that the rule exceeds both of its possible rationales, for some titles may be sufficiently expressive to stand on their own as literary works. For example, a categorical rule against copyright for titles would improperly deny protection to titles such as Arthur Kopit's *Oh Dad, Poor*

---

30. Homeglossary.com
31. Construction Term Glossary
32.  Glossary of Mortgage Terms
33. Glossary of Global Trade Terms
34. Finance-Glossary.com
35.  GLOSSARY OF LEGISLATIVE TERMS
36. MonsterMoving Mortgage Glossary
37. Real Estate and Mortgage Glossary
38. Comprehensive Financial
39. WebmasterWorld Webmaster and Search Engine Glossary
40.  WashingtonPost.com: Business
41.  Dictionary of Computing and Digital Media
42. The On-line Medical Dictionary

*Dad, Momma's Hung You in the Closet and I'm Feelin' So Sad*, that do more than merely identify the work and that are sufficiently original and expressive to qualify for protection. The better approach to copyright in titles is to test the title at issue against the same measures of originality and expressiveness that the courts apply to literary works generally. This approach is entirely consistent with the facts of the reported cases, none of which involved titles of more than a few words." *Goldstein*, § 2.7.3

**6.    Copyright Law Protects Imbedded Headlines.**

Copyright law protects imbedded headlines, which are an integral part of any news story. When Google reproduces the AFP headline in conjunction with the story lead, the court must look at the taking in a context of Google's reproduction of part of a news story. The copying of a headline/story combination is the taking of the most important part of a news story.

The amount of Google's copying of AFP material is not *de minimus*, it is clearly sufficient to be infringing. According to Google's calculations, (Google Inc. Answer and Counterclaim, paragraph 154) AFP'S story leads generally represent about 5 percent of its stories length and if you add the textural component of the headline, it is even more. In *Harper v Nation*, 471 U.S. at 539, the Supreme Court found that the Nation Magazine's reproduction of 300 words out of 200,000 words, which represents just .13 of one percent, to be a sufficient amount of copying to be an infringement, certainly the 5 or 8 percent, copied by Google of the Imbedded Headlines, (which is 600 times as much copying as the court found improper in *Harper*) would qualify as infringement from a quantative point of view. The Supreme Court also looked at the taking as a proportion of the Nation's infringing use as well. The Court found that the 300 words represented 13

percent of the article that appeared in the Nation.  Google's use of the Imbedded Headline

in regard to textual usage in each Google story constitutes 100 percent of Google's use.

If one adds the Stand Alone Headlines, and publication title links, it would still represent

approximately 70 percent of Google's news stories.  In *Nihon Keizai v. Shimbun, Inc. v.*

*Comline Businesses Data, Inc*., 166 F.3d 65, 71 (2nd Cir.1988), the Court of Appeals for

the Second Circuit stated "it is not possible to determine infringement through a simple

word count, the quantative analysis of two works must always incur in the shadow of

their quantative nature."  In that case the copying was of 20 articles out of 90,000, which

represented only two one thousandths of a percent and yet the court found that that was

sufficient to be an infringement.  Clearly, no matter which way one measures the scope of

Google's unauthorized use from a quantative analysis it is more than enough to be an

infringement.  This is particularly true in light of the fact that the taking encompasses the

most important parts of AFP's story, its headline and lead.

The most prominent part of every one of Google's news story consists of

Google's unauthorized taking of a third parties' Imbedded Headline (headline and story

lead) which it reproduces without authority.  Google acknowledges the significance of

the story lead and headlines as the most significant part of AFP's news stories (Google

Inc.'s Answer and Counterclaim, paragraph 144).  The Supreme Court in the *Harper* case

found that the taking of the most significant aspect of a work will result in an

infringement.  The court looked with favor upon the District Court's statement  that, "the

[Nation] had published 'published its article for profit,' taking 'the heart' of a soon-to-be-

published book" and even though the taking was less then one percent it resulted in an

infringement.  *Harper v. Nation*, 471 U.S. at 564-565 (citing *Harper & Row, Publishers,*

*Inc. v. Nation Enterprises*, 557 F. Supp. 1067, 1072 (SDNY 1983).  Although certain elements of the Ford memoirs, such as historical facts and memoranda, were not per se copyrightable, the District Court held that it was "the totality of these facts and memoranda, collected together with Ford's reflections that made them of value to The Nation, [and] this . . . totality . . . is protected by the copyright laws."  *Id.* at 1072-1073.).

While the *Harper* case was decided on fair use issues, its discussion of the unauthorized taking of news and the analysis of the quantitative and qualitative aspects of the taking provide guiding principles for this cause of action.  The Supreme Court in *Harper* looked to balance the limited rights provided under copyright law for news and the reasonable expectations of those who write about the news.  The court states that while, "no author may copyright his idea of the facts he narrates...  As this court long ago observed, "the news element information respecting current events contained in the literary production is not the creation of the writer, but is a report of matters that ordinarily are *publici juris*; it is the history of the day...  But, copyright assures those who write and publish factual narratives...  That they may at least enjoy the right to market the original expression contained therein, as just compensation for their investment...."  (internal sites omitted).  *Harper v. Nation*, 471 U.S. at 556-557.

In *Harper,* while in a slightly different context, the Supreme Court does address Google's argument that there is a great public interest in the free flow of information.  In the *Harper* case the dissemination of news was through a news article in a magazine and Google is framing its arguments in terms of the news dissemination over the internet.  The court stated that "the public interest in the free flow of information is assured by the law's refusal to recognize a valid copyright in facts."  *Id*. at 558.  However it goes on to

state, "the Fair Use Doctrine is not a license for corporate theft, empowering a court to ignore a copyright whenever it determines the underlying work contains of possible public importance." *Id.* The court then states "in our haste to disseminate news, it should not be forgotten that the Framers intended copyright itself to be the engine of free expression. By establishing a marketable right to use one's expression, copyright supplies the economic incentive to create and disseminate ideas. It is fundamentally at odds with the scheme of copyright to accord lesser rights in those works that are of the greatest importance to the public. Such a notion ignores the major premise of copyright and injures authors and public alike. To propose that Fair Use be imposed whenever the social value of dissemination outweighs any detriment to the artists would be to deprive copyright owners of the right and the property precisely when they encounter those users who could afford to pay for it." *Id*. at 558-559 (internal quotations removed).

### 7.    Copyright Law Protects Stand-Alone Headlines.

AFP's Stand Alone Headlines are also as a matter of law, protectable expressions. It is conceded that copyright protection does not extend to facts. But what is a headline, it is not a simple fact but the result of creative and original work undertaken by professionals who review a story and within the constraint of style and space create an original creative (often witty) written, expressive compilation of the facts found in the rest of the story.[5] In *Nihon v. Comline*, the Court of Appeals for the Second Circuit held that "the compilation of facts however, may be protected by copyright because they can display originality in their selection, arrangement or presentation of facts. Descriptions of facts afford even more room for originality. The question then is not simply, whether

---

[5] The American Copy Editors Society (www.copydesk.org) even awards prizes each year for the best headlines.

[the defendant] copied from [the plaintiff's] articles, but whether they copied expression original to [the plaintiff]." *Nihon v. Comline*, 166 F.3d at 70. The Court of Appeals went on to explain that while there can be no copyright in the news itself, "copyright does protect the manner of expression, the author's analysis of interpretation of events, the way he structures his materials and marshals facts, his choice of words and the emphasis he gives to particular developments." *Id.* AFP's creation of its headlines even when viewed on a stand alone basis, fulfills these requirements and contains the necessary degree of originality to be protected by copyright. News headlines are an original and creative compilation of news facts.

### 8.    Agence France Presse Representative Headlines Are Protected.

Even though headlines are protected as factual compilations and do not have to be funny or witty (all they need do is represent original choices in the selection and presentation of facts), Google's characterization that all AFP headlines lack any creativity, that they are mere mechanical formulaic recitations of fact is not true.

When Google selectively lists headline examples from a single registration and claims them to be "representative" they misconstrue the nature of AFP's registrations and the registration process. The Copyright Office has not changed its basic forms or basic procedures to accommodate the information age. As such practitioners and companies filing copyright registrations are forced to squeeze oval pegs into round holes when registering technological works. For example, a computer program is filed under form TX as a literary work. There is no special computer program form. The same hold true if you want to register your website, you can register it as a literary work or a work of visual arts (form VA), again there is

no form for websites.  When a wire service wants to register an ever changing online

data base's contents, based on the guidance provided by the copyright office, it must

file as AFP has done, for text based wires one uses form TX and for predominately

image based  collections of works form VA is used.  The Copyright Office asks that

you file on a calendar based quarterly basis and submit 50 pages from a specific day

in the quarter**.**  *See* Copyright Information Circular 65, *Copyright Registration for*

*Automated Databases*.

The selection of day or content of that day is done in a random basis without

regard to specific content; the requirement is any 50 pages from any one day in the

quarter.  It then defines this deposit as "a representative sample" for purposes of the

registration.  It is not meant to be nor is it necessarily a truly "representative"

sampling in the English sense of the word as proposed by Google.  Each day's news

stories, including their headlines and photographs, are different and each random

selection of 50 pages is different one from the next.  If Google had wanted to present

a more balance "representative" sample of AFP headlines they might have included

many of AFP headlines which express, in addition to original compilations of fact,

wit and humor.  The following is but a small sampling of such AFP headlines:

**"Ur dumped" -- research shows text a popular way of ending romances**
10/14/2005 03:59 GMT - AP

**A millionaire hitchhiker's guide to the galaxy**
10/12/2005 16:28 GMT - AFP

**Now showing: 'Star Wars' under the stars, as US drive-ins cling to life**
10/12/2005 12:06 GMT - AFP

**Philadelphia to become City of Brotherly Wi-Fi**
10/05/2005 20:36 GMT - AFP

**Robot dog keeps over-eaters on tight leash**
08/31/2005 18:00 GMT - AFP

**Pop goes soda in US schools in victory for health campaign**
08/18/2005 21:24 GMT - AFP

**Money can buy happiness, but it's fleeting: new research**
08/15/2005 15:01 GMT - AFP

**Chocolate, naughty, nice and good for you?**
07/09/2005 GMT - AFP

**'E.T. blog home': US firm to send Internet diaries into space**
07/19/2005 14:16 GMT - AFP

**Poor-fitting bras leave Australian women feeling like boobs**
07/12/2005 03:34 GMT - AFP

**A goat?  How kind!  British charity unwraps unorthodox gift service**
05/12/2005 11:27 GMT - AFP

**Coming soon: Colonel Kadhafi: the opera**
01/13/2005 15:42 GMT - AFP

**Fat, sluggish but he east his greens: the remarried man**
12/31/2004 13:07 GMT - AFP

**Ready, steady, wrap!**
12/05/2004  08:42 GMT - AFP

**Pizzle fizzle wilts New Zealand trade with China**
10/03/2004  09:07 GMT - AFP

**Springsteen plays political born-again in the USA**
10/02/2004 05:55 GMT - AFP

**Pebbles, clams and razors; the hottest phones around**
02/18/2005 01:45 GMT - AFP

**French modern Bo-peeps flock to shepherds' school**
02/26/2005 13:10 GMT - AFP

**Raunchy return to roost for New York hawks**
02/17/2005  15:15 GMT - AFP

**9.      Agence France Presse Guidelines are No Bar to Copyright Protection**

Google spends a great deal of time in its Motion for Partial Summary Judgment highlighting AFP's style guide and its guidelines for the creation of headlines.  It attempts to devise a theory that if a literary work is required to follow guidelines or has rules of construction somehow it is denied copyright protection.  Once again, the overbroad claims of Google if accepted would have disastrous effects.  For example, if the Court were to accept such a theory much structured writing could be denied protection.  Protection for Sonnets would be in jeopardy and certainly, protection for the Haiku would vanish.  The requirements for a Haiku make AFP's style guide an exercise in liberalism.[6]  Certainly, if AFP's stylistic requirements for headlines render them ineligible for protection then no Haiku would be entitled to copyright protection because of the short nature and extremely formulaic requirements of the genre.

**10.      Agence France Presse Licenses Its Headlines**

It is important to note that AFP licenses to subscribers not only its stories and photographs, but also its Stand Alone Headlines.  *See* Declaration of Gilles Tarot.  One of the growing areas of intellectual property licensing is in the wireless environment in which people with Blackberry's, Palm Pilots and cell phones of all varieties, are downloading information.  The information may be music, videos, wallpapers, but a large and important component of wireless downloads is news.  Due to the small screen size found on cell phones, the news provided is presented in a truncated fashion as a result

---

[6] "Haiku is a poetic form and a type of poetry from the Japanese culture.  Haiku combines <u>form content</u>, and <u>language</u> in a meaningful, yet compact form.  Haiku poets, which you will soon be, write about everyday things.  Many themes include nature, feelings, or experiences.  Usually they use simple words and <u>grammar</u>.  The most common from for Haiku is three short lines.  The first line usually contains five (5) syllables, the second line seven (7), and the third line contains five (5) syllables.  Haiku doesn't rhyme.  A Haiku must "paint" a mental image in the reader's mind.  This is the challenge of Haiku - to put the poem's meaning and <u>imagery</u> in the reader's mind in ONLY 17 syllables over just three (3) lines of poetry. " University of Tennessee web site,  HTTP://volweb.utk.edu/schools/bedford/harrisms/haiku.htm.

AFP licenses its Stand Alone Headlines as a separate service.  In the wireless environment, an individual who wants to keep track of the news can do so by subscribing to AFP wireless headlines service.  *Id.*  To accept Google's contention that all stand alone headlines are not protectable, would allow any third party to copy AFP's (or any other news provider in the wireless environment) headline service and not only usurp their business but in essence could destroy the market for the provision of wireless news headlines by removing the economic incentive for a provider to subscribe.  Why pay a wire service for a wireless headline subscription when you can just copy your competitor's news headlines?  What news provider would enter into a market, go to the expense of creating the technology necessary to transmit its news product in a wireless format, their news headlines or short versions of their news or even their photos, if they know that they are not protected and any competitor or third party may simply duplicate them.  The Court of Appeals for the Sixth Circuit, in *Murray Hill Publications, Inc. et al v. ABC Communications, Inc.*, 264 F.3d 622, 633 (6th Cir. 2001), considered this result and found that, "[t]o constitute an invasion of copyright it is not necessary that the whole of a work should be copied, nor even a large portion of it in form or substance, but that, if so much is taken that the value of the original is sensibly dismissed, or the labors of the original author, are substantially, to an injurious extend, appropriated by another, that is sufficient to constitute an infringement."

### Conclusion

Google takes an absolute position that no news headline, whether imbedded as part of the story, or a stand-alone headline can ever attain copyright protection.  On the other hand, AFP's position is when a headline is imbedded and copied as part of a story

or story lead it will always be protected and a stand alone headlines often reaches the level of originality called for under copyright law. Perhaps a headline such as "Pope Shot!" should not be protectable, but that result is already dictated by the merger doctrine and the originality or de minimus standards currently found in copyright law. The Court does not need, as Google demands, to strip protection from all news headlines to achieve a balanced and appropriate result. A news headline is not a short phrase or title but rather an important and valuable creative compilation of news facts worthy of protection under copyright law.

Wherefore plaintiff Agence France Presse respectfully requests that the Court deny Google's Motion for Partial Summary Judgment.

Respectfully submitted,

Dated: October 26, 2005

_____ /s/ _____
Joshua J. Kaufman, Bar No. 945188
Mary Jane Saunders, Bar No. 436608
VENABLE LLP
575 7th Street, NW
Washington, DC  20004-1601
202-344-8538 (phone)
202-344-8300 (fax)
jjkaufman@venable.com
mjsaunders@venable.com

*Counsel for Agence France Presse*