IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AGENCE FRANCE PRESSE, )<br>   *Plaintiff and Counter Defendant* )<br>)<br>v. )<br>)<br>GOOGLE INC., )<br>   *Defendant and Counter Plaintiff* ) | Civil Action No. 1:05CV00546 (GK)<br>Next Due Date: March 21, 2006<br>(Status Conference) |

**GOOGLE'S REPLY TO AFP'S OPPOSITION TO PARTIAL
SUMMARY JUDGMENT DISMISSING COUNT II (HEADLINES)
FOR LACK OF PROTECTABLE SUBJECT MATTER**

AFP's 23-page Opposition fails to cite a single authority holding that copyright law protects news headlines. Nor does AFP otherwise refute Google's showing that headlines cannot be protected because they are (i) too short, (ii) titles, and (iii) ordinary factual statements. AFP's other arguments about one-fact compilations and "embedded headlines" are equally unsupported and do nothing to avoid partial summary judgment.

1. **AFP Headlines Are Too Short To Be Protected.**

AFP does not dispute that its headlines are 10 words or less.[1] AFP cites no case protecting anything nearly that short. Nor does AFP address the series of cases in Google's Memorandum (at 9-10) refusing such protection, even where the sentences were quite creative (e.g. "PROTECTING THE EARTH FROM THE SCUM OF THE UNIVERSE," "Eat Your Art Out, Chicago," and "You've got to stand for something or you'll fall for anything"), for lack of sufficient protectable expression. For this reason alone, Google is entitled to prevail as a matter of law.

---

[1] Because AFP served no counterstatement of facts, it may be deemed to have admitted Google's statement. LCvR 56.1. The Declaration of Giles Tarot merely attests that, during 2004-05, AFP used 19 quoted headlines and that AFP "licenses" access to headlines on a stand-alone basis.

2.     **AFP Headlines Are Unprotectable Titles.**

AFP does not deny that the binding law of this circuit categorically excludes titles from copyright protection. *Wilson v. Hecht*, 44 App. D.C. 33, 36 (D.C. Cir. 1915).  AFP says "scholars" like Professor Goldstein dislike this "blanket rule," but does not challenge Goldstein's report that "[c]ourts universally have held that titles of works are not copyrightable." 1 *Goldstein on Copyright* § 2.7.3 & n.46.  Needless to say, settled precedent trumps scholarly preference.

AFP denies the title exclusion applies, arguing that 40 dictionaries do not use the word "headline" to define "title."  But AFP does not deny that standard dictionaries define "title" in terms that encompass "headlines." *See e.g.*, *Webster's Third Int'l Dictionary* 2400 (1981) ("a descriptive or general heading (as of a chapter in a book)").  Nor does it deny that many dictionaries expressly define "headline" as a "title." *See e.g.*, *Webster's II New Riverside Univ. Dictionary* 569 (1984) ("title or caption of a published article"); *The Am. Heritage Dictionary* 392 (4th ed. 2000) ("the title or caption of a newspaper article"); *The Penguin Webster Handy College Dictionary* (3d ed. 2003) ("a title in large type, as in a newspaper").[2]  AFP might as well argue that a rule applicable to insects does not apply to ants because most definitions of "insect" do not mention ants, even though they are very common.[3]

AFP's last gasp claim that titles are "identifiers" and headlines are not is untrue.  Both the Chicago Manual of Style § 17.188 (15th ed. Univ. of Chi. Press 2003) and *The Bluebook: A*

---

[2] AFP's list of dictionaries (at 12 n.3) invites parody, *e.g.*, "MoneyGlossary.com," "INVESTORWORDS," "Construction Term Glossary," "Glossary of Mortgage Terms," "Glossary of Global Trade Terms," "The On-Line Medical Dictionary."  It overlooked more conventional sources, *e.g.*, The Synonym Finder (Rodale Press, Inc. 1978) ("title" and "headline" are synonyms).  Indeed, the thesaurus evoked in Microsoft Word 2000 by typing Shift + F7 lists "title" as a synonym for "headline."

[3] AFP argues that, because headlines are so common, it would be a "glaring omission" for the Copyright Office not to have mentioned them expressly in its exclusions from copyright.  However, if such a common item were protected, how could it be that no authority ever said so?  The answer is that the Copyright Office regulation is written in general terms that clearly encompass headlines. 37 C.F.R. § 202.1(a) ("Words and short phrases such as names, titles . . . .").

*Uniform System of Citation* § 16.5 (Columbia Law Review Ass'n et al. eds., 18th ed. 2005), require a headline to identify a news story. Indeed, the *Blue Book* states that "citations to unsigned [newspaper] pieces should begin with the <u>title</u> of the piece," giving as an example: "*Cop Shoots Tire, Halts Stolen Car,* S.F. CHRON., Oct. 10, 1975, at 43." *Id*. (emphasis added).

In sum, AFP headlines are titles and, hence, they are not protected by copyright law.

3.      **AFP Headlines Are Unprotectable Ordinary Statements.**

AFP does not deny that ordinary statements are excluded from copyright protection. It asserts, however, that its headlines may be protected as "compilations," and that a few are not "ordinary" because they display a touch of "wit or humor." AFP is mistaken.

(a)     **Single Sentences Are Not Protectable Compilations**.

Noting that every headline requires the author to choose one fact out of many available, AFP makes the jaw-dropping and utterly unsupported assertion that choice of a single fact alone gives rise to a protectable "compilation." In so arguing, AFP simply ignores Google's authority that substantial length is necessary to permit factual statements to display protectable expression, and AFP relies on cases that, if anything, make Google's point.

To illustrate its claim, AFP lists (at 7 n.2) twenty headlines from various sources that address various developments in a series of meetings between Presidents Bush and Karzai. Headline 1 reports that, on whatever day it concerned, Karzai made no progress with Bush. Headline 2 reports that, at another day or time, an agreement was reached. Headline 3 appears to report on a news conference at which Karzai declined to blame the U.S. for prisoner abuse. Claiming these headlines show that reporters chose to report different facts from "the exact same news story," AFP argues that each headline is a compilation. Google doubts these reporters were, in fact, dealing with the same story, as opposed to a series of stories that emerged hour by

hour over the course of the meetings. But it doesn't really matter. No court or other authority ever has suggested that one phrase reporting one fact is a protectable compilation.

A "compilation" is a work "formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship." 17 U.S.C. § 101. For example, a telephone directory may be a protectable compilation, though many are not. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 358 (1991). For protection to exist, however, the selection, coordination, and arrangement in the work must display a meaningful amount of creative and original expression. *Id.* Selecting a single fact is not compilation authorship.[4] Moreover, if AFP's headlines are viewed as compilations, they are at most compilations of *words,* which are no more entitled to copyright protection than short phrases and titles as "compilations" of words.

Google's Memorandum did not dispute that the presentation of facts in a substantial news story might qualify for protection. It demonstrated, however, that appreciable length is necessary to permit protectable expression to appear. Thus, *Nihon Keizai Shimbum, Inc. v. Comline Bus. Data, Inc.*, 166 F.3d 65, 71 (2d Cir. 1999), generally protected news stories against wholesale copying, but held that a single paragraph of such a story was not protected. Similarly, *Alberto-Culver Co. v. Andrea Dumon, Inc.*, 466 F.2d 705, 710 & n.2 (7th Cir. 1972), withheld protection from a full paragraph of product description. And *Publ'ns Int'l, Ltd. v. Meredith Corp.*, 88 F.3d 473, 480-81 (7th Cir. 1996), ruled that a compilation of recipes might be protected, but a particular recipe could not.

---

[4] Moreover, as *Feist* and its progeny make clear, selecting one fact or idea does not constitute "compilation" authorship. *See, e.g.*, *BellSouth Adver. & Publ'g Corp. v. Donnelley Info. Publ'g, Inc.*, 999 F.2d 1436, 1441 (11th Cir. 1993) (selecting time period and geographic region to include in directory does not make compilation protectable).

AFP simply ignores the authorities presented by Google, cites no case directly on point, and relies on cases that actually cut against its position.  For example, AFP cites (at 17-18) *Comline*'s holding that a news story may achieve sufficient originality in its selection, arrangement, and presentation of facts to merit protection.  *But it simply ignores Comline's square holding that one paragraph – the lead paragraph -- was insufficient.*  *Comline*, 166 F.3d at 71.  If selecting the facts to place in a story lead constituted a protectable compilation, then that holding would be flatly wrong.

Next, to support its claim that "a headline . . . may, when viewed as a whole, display a sufficient degree of originality," AFP cites (at 9-10) *Salinger v. Random House, Inc.,* 811 F.2d 90, 98 (2d Cir. 1987).  But *Salinger* says no such thing, has nothing to do with headlines, and actually confirms that sentences are too short to be protected.  The *Salinger* district court concluded an accused infringer had taken very little protected expression because his quotations were short, usually less than "a complete sentence."  *Id.*  The court of appeals reversed, but not because it believed sentences were protected.  Instead, the appellate court stressed that the quoted sentences were embodied in close paraphrases (another form of actionable copying) that were much longer: "[i]f the District Judge had included paraphrases, he would have noticed numerous instances where the quantity of material taken from a single letter greatly exceeded a single sentence."  *Id.*  Indeed, "[t]he material closely paraphrased frequently exceeds ten lines from a single letter."  *Id.*  Although some of the passages copied by paraphrasing "could be said to lack sufficient creativity to warrant copyright protection," the remainder was "sufficient copying of protected material to constitute a very substantial appropriation."  *Id.*  In short, the district court's error lay in overlooking how much had been copied, not in its ruling that short passages lacked protection.

Remarkably, AFP devotes several pages (10, 15-16) to *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539 (1985). There, the defendant obtained dishonest access to the unpublished memoirs of a former president and hastily printed excerpts that usurped the statutory right of first publication – causing cancellation of the author's contract. *Id.* at 542-43, 548. The infringed work was not a headline, title, or other short component, but an entire lengthy article. *Id.* at 548. And the copying consisted of "generous verbatim excerpts" totaling "between 300 and 400 words" – equivalent to 50 AFP headlines (assuming an 8 word average). *Id.* at 548-49. Here is one of several similar examples, in which the Court used bold face to identify what had been copied:

> Ultimately, Ford sums up the philosophy underlying his decision as one he picked up as a student at Yale Law School many years before. "**I learned that public policy often took precedence over a rule of law. Although I respected the tenet that no man should be above the law, public policy demanded that I put Nixon – and Watergate – behind us as quickly as possible**."
>
> Later, when Ford learned that Nixon's phlebitis had acted up and his health was seriously impaired, he debated whether to pay the ailing President a visit. "**If I made the trip it would remind everybody of Watergate and the pardon. If I didn't, people would say I lacked compassion**." Ford went:
>
> > **He was stretched out flat on his back. There were tubes in his nose and mouth, and wires led from his arms, chest and legs to machines with orange lights that blinked on and off. His face was ashen, and I thought I had never seen anyone closer to death.**

*Id.* at 575 (footnote omitted).

In the context of a fair use analysis – not copyrightability – the court of appeals had held that the copying had only "meager" and "infinitesimal" expression. *Id.* at 566. The Supreme Court disagreed. It emphasized that the takings were not "isolated phrases" but "generous verbatim excerpts" constituting "subjective descriptions and portraits of public figures whose

power lies in the author's individualized expression." *Id.* at 549, 563. Indeed, the infringer had testified he copied these excerpts "precisely because they qualitatively embodied [former President] Ford's distinctive expression." *Id.* at 565. On those facts, the Court concluded that enough expression had been taken to merit protection of the highly favored right of first publication. *Id.* at 569.

Needless to say, a case that emphasizes the taking of generous excerpts consisting of paragraph after paragraph does not support a claim that a headline is protectable. In short, the law is clear that to be protectable, a fact-based work must have appreciable length, and that a single sentence or short paragraph will not do. No case cited by AFP supports its argument that a headline is, itself, a protectable compilation.

(b)     **Occasional Word Play Does Not Alter The Outcome.**

Abandoning the 50 "representative" headlines that it used to register its database copyright, AFP argues that during 2004 – 2005 at least 19 of its headlines displayed some degree of "wit and humor," *e.g.*, "Poor-fitting bras leave Australian women feeling like boobs" or "Chocolate, naughty, nice, and good for you." AFP offers no authority that a single pun, quip, jape, or other trivial word play provides protectable expression, nor does Google know of any. To the contrary, Google collected (at 9) a series of cases denying protection to sentences at least as witty and humorous as AFP's offerings. And Copyright Information Circular 34, which AFP quotes at length (at 11), is clear that including a "play on words" is not sufficient expression to sustain copyright protection.

The Constitution did not authorize Congress to create a copyright system to encourage isolated puns, quips, and similar word play.[5] If such trivial "expression" were to be protected,

---

[5] Even if "wit and humor" headlines could be protected – and they cannot – Google still should receive summary judgment with respect to the 50 representative headlines that AFP makes no direct attempt to defend. That would

clever lawyers would find some argument for copyrighting any sentence imaginable, *e.g.*, "The utter simplicity of its wording is an ironic commentary on its horrific subject matter."[6] Even the best 19 headlines AFP could comb out of the tens of thousands it published during 2004 and 2005 simply do not contain protectable expression.[7]

4.  **AFP's "Imbedded Headline" Claim Goes Only To Infringement And Is Irrelevant To This Motion.**

Count II of AFP's Complaint asserts that AFP's headlines themselves are copyrighted. That is the claim Google's present motion attacks, showing that such headlines lack protectable subject matter and are not copyrightable as a matter of law. Perhaps seeing the handwriting on the wall, AFP's Opposition shifts ground, asserting that its "imbedded headlines" are protectable.

Needless to say, neither the term nor the concept of "imbedded headline" appears anywhere in the Complaint and a Westlaw search reveals no case that ever has recognized an "imbedded headline" as a type of work. Instead, it is a term coined by AFP to obscure that it really is making an infringement argument -- that, if Google copies both a headline and a lead sentence it may infringe a copyright in a news story or some broader work that includes the news story.[8] AFP is mistaken, as Google will show if it is ever necessary to reach the question of

---

leave AFP with a case based on protecting the odd "jazzed up" headline that its own style manual forbids. *AFP Style Manual* (AFP1322).

[6] Lest such an argument be thought implausible, we note that this apparently is the "wit" behind AFP's headline "Coming soon: Colonel Kadhafi: the opera."

[7] AFP professes concern that refusing to protect its headlines will threaten protection for Haiku, a Japanese art form that emphasizes extreme metaphor. However, even the middle school Haiku lesson cited by AFP makes clear that Haiku is not limited to a simple plain-language expression of a single idea. Moreover, AFP cites no authority that a single Haiku has been held protected. Nor does it give any reason to believe that protection of individual Haiku has been important to the art form over the centuries. In any event, and with all due respect, when AFP headlines include a pun on the two meanings of "boob," that ain't Haiku.

[8] Google does not dispute that a substantial news article may receive at least "thin" copyright protection against wholesale copying. But that is not the infringement claim AFP makes, even in its "imbedded headline" argument. AFP continues to be determinedly obscure as to the identity of the works that it accuses Google of infringing. This has led to the pending motion to dismiss the AFP complaint for failure to state a claim. Assuming that motion will

infringement in this case. But AFP did not plead in Count II of its complaint that the copying of a headline in combination with a lead sentence infringes the copyright of some undefined work. Instead, it deliberately chose to plead, specifically, that copying of just a headline infringes its "copyrights of the headlines." Google's present motion seeks partial summary judgment that AFP's headlines are not themselves copyrightable, and AFP's "imbedded headline" discussion simply is irrelevant to that point.

5.     **The Claimed "Value" Of AFP's Headlines Is Equally Irrelevant.**

AFP asserts that its headlines must be copyrighted because its "Stand Alone Headlines" are "licensed" and, hence, have commercial value.[9] But the conclusion does not follow. The telephone directory at issue in *Feist* had value; that is why the defendant copied it. But the Supreme Court was emphatic that copyright law exists, not to protect value as such, but to encourage original and creative expression, which is something else. *Feist*, 499 U.S. at 352-54.

There are many other examples of uncopyrightable facts that have commercial value. For example, stock market reports, sports scores, and the like are streamed to computers, PDAs, cell phones, and the like. There is a subscription charge because such ready access to facts has value. But such facts are not protected by copyright. *Id.* at 350-51; 17 U.S.C. § 102(b).

Google has never denied that AFP headlines provide factual information. Indeed, they identify the key fact reported in the AFP story. That is why the headlines are used to identify their stories. But facts, however important and valuable, are not protected by copyright. The value that leads some to subscribe to AFP's Stand Alone Headline service is not copyright value.

---

be granted – as it should be – AFP does not dispute that the present motion remains live by virtue of Google's counterclaims.

[9] The term "licensed" seems to have been carefully chosen to suggest intellectual property. It appears that the Stand Alone Headlines are made available to subscribers via an electronic service. Whether or not this arrangement is conceptualized as having a "license" component, the key to the arrangement is ready access to facts.

6.    **Conclusion.**

The foundation of AFP's Count II is the claim that copyright protects each AFP headline as such. That claim is contrary to law. Headlines are not protected on at least three independently sufficient grounds: they are (i) too short, (ii) titles, and (iii) ordinary statements. For each of these reasons, the Court should grant partial summary judgment dismissing Count II and declaring that AFP's headlines are not protected. As part of that declaration, the Court should hold that the 50 representative AFP headlines identified in Exhibit A lack copyrightable subject matter.

Respectfully submitted,

Dated:    November 14, 2005

/s/ Thomas W. Kirby
Andrew G. McBride (Bar No. 426697)
Bruce G. Joseph (Bar No. 338236)
Thomas W. Kirby (Bar No. 915231)
Scott E. Bain (Bar No. 466657)
WILEY REIN & FIELDING LLP
1776 K Street NW
Washington, DC 20006
202.719.7000
Fax: 202.719.7049